IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND AFL-CIO, *et al.* *Plaintiffs*, v. UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency, *Defendants*. | No. 1:25-cv-00510-MSM-PAS **DEFENDANTS' MOTION TO TRANSFER VENUE** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 6

    I.    The D.D.C. is an Available Alternative Forum to Adjudicate the Issues. ........................ 7

    II.   The D.D.C. is a More Convenient Forum for the Parties and (If Applicable) the Witnesses. ................................................................................................................ 8

    III.  Transfer to the D.D.C. Will Serve the Interests of Justice. ............................................. 10

CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Blinzler v. Marriott Int'l, Inc.*,
  857 F. Supp. 1 (D.R.I. 1994) ................................................................................................ 6

*Camp v. Pitts*,
  411 U.S. 138 (1973) ............................................................................................................ 9

*Cont'l Grain Co. v. Barge FBL-585*,
  364 U.S. 19 (1960) ............................................................................................................11

*Dep't of Educ. v. California*,
  604 U.S. 650 (2025) ........................................................................................................... 7

*Ecological Rts. Found. v. U.S. Env't Prot. Agency*,
  No. 19-CV-04242-RS, 2019 WL 5295124 (N.D. Cal. Oct. 18, 2019) ....................................... 9

*Elbalah v. Republic Ins. Co.*,
  879 F. Supp. 3 (D.R.I. 1995) ......................................................................................... 7, 12

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990) ..........................................................................................................11

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ........................................................................................................... 9

*Goldlawr, Inc. v. Heiman*,
  369 U.S. 463 (1962) ........................................................................................................... 7

*Gray v. Derderian*,
  400 F. Supp. 2d 415 (D.R.I. 2005) ..................................................................................... 7

*Katz v. Pershing, LLC*,
  672 F.3d 64 (1st Cir. 2012) ................................................................................................ 7

*McEvily v. Sunbeam-Oster Co., Inc.*,
  878 F. Supp. 337 (D.R.I. 1994) ......................................................................................... 8

*Mulcahy v. Guertler*,
  416 F.Supp. 1083 (D.Mass.1976) ...................................................................................... 7

*Multibene Ingredients Oy Ltd. v. Sturm Foods Inc.*,
  658 F. Supp. 2d 250 (D. Me. 2009) ................................................................................... 8

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
  145 S. Ct. 2658 (2025) .................................................................................................. 7

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ...................................................................................................... 6

*Town Of Winthrop v. F.A.A.*,
  535 F.3d 1 (1st Cir. 2008) ........................................................................................... 9

*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
  91 F.3d 1 (1st Cir. 1996) ......................................................................................10, 11

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ...................................................................................................11

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) .................................................................................................... 6

*Vitalife, Inc. v. Omniguide, Inc.*,
  353 F. Supp. 3d 150 (D.P.R. 2018) ............................................................................ 7

**Statutes**

28 U.S.C. § 1391 ............................................................................................................... 7

28 U.S.C. § 1404 ........................................................................................................... 1, 6

42 U.S.C. § 7434 ..................................................................................................... 3, 5, 6

The One Big Beautiful Bill Act,
  Pub. L. No. 119-21, § 60002, 139 Stat. 72 (2025) ..................................................... 4

# INTRODUCTION

Defendants EPA and its Administrator move to transfer this case to the U.S. District Court for the District of Columbia ("D.D.C."), where it can be consolidated with *Harris County v. U.S. Environmental Protection Agency*, No. 1:25-cv-03646 (D.D.C.). The two actions are substantially similar. In both cases, the plaintiffs challenge EPA's decision to terminate federal grants awarded under a program known as Solar for All ("SFA"). Both lawsuits assert substantially similar claims under the Administrative Procedure Act ("APA"), the U.S. Constitution, and *ultra vires* doctrines. The plaintiffs in each suit seek the same declaratory and injunctive relief—asking each court to reinstate the same SFA grant program. The lawsuits thus raise overlapping factual and legal issues. And three Plaintiffs in this case reside where their public representatives (Rhode Island, Pennsylvania, and the District of Columbia) have filed a nearly identical action against EPA and its Administrator in a different district. *See Arizona v. U.S. Env't Prot. Agency*, No. 2:25-cv-02015 (W.D. Wash.). Defendants have moved to transfer that case to the D.D.C. as well, so that all three cases can be litigated in a common forum.

Defendants therefore ask the Court to exercise its discretion to transfer this case under 28 U.S.C. § 1404(a), because both public and private interests will be served through the transfer. Allowing these cases to proceed concurrently in the same federal district will save time and judicial resources and will result in a single judgment, avoiding the confusion of potentially contradictory orders and outcomes for the parties, especially where the plaintiffs in this case and *Harris County* are seeking broad injunctive relief that, if granted, could affect every SFA grantee and all SFA grant funds.

Private interests are also served through transfer. The lawsuit has no special nexus to this venue. Both this case and *Harris County* raise primarily legal issues, stemming from EPA's

1

decision to terminate each SFA grant. The District of Columbia is also home to one of the Plaintiffs, and a more convenient location for most other Plaintiffs. EPA is also headquartered in the District of Columbia, and its Department of Justice counsel are located there. And with both this case and *Harris County* in the earliest stages of litigation, now is the time to transfer, so that all parties can reach agreement on a case schedule and proceed efficiently to judgment. Thus, to avoid contradictory orders and duplicated efforts, and to proceed efficiently in one forum, the case should be transferred to the D.D.C. where it can be consolidated with *Harris County*.

## BACKGROUND

Plaintiffs are alleged subgrantees or beneficiaries of grants awarded by EPA in August 2024 under the SFA program. ECF No. 1 ("Compl.") ¶ 21. They consist of various nonprofits, business, or individuals, including a Rhode Island labor union, a Rhode Island nonprofit, an Atlanta homeowner, a District of Columbia nonprofit, a Georgia-based solar installer, a Georgia-based small business, a Pittsburgh-based solar installer, and an Indiana-based advocacy group. *Id.* ¶¶ 22–29. On October 6, 2025, they filed suit against Defendants EPA and its Administrator to challenge EPA's termination of the SFA grant program. *Id.* ¶ 2. They allege that EPA violated the APA (Counts I–IV), *id.* ¶¶ 168–221, and that EPA's actions were *ultra vires*, in excess of its authority under the U.S. Constitution (Counts V and VI), *id.* ¶¶ 222–49. For relief, Plaintiffs ask the Court to declare EPA's actions unlawful, vacate and set aside EPA's actions, order EPA to reinstate the grant program, and enjoin EPA from deobligating or otherwise interfering with the grant funds. *Id.* ¶ 250.

Plaintiffs' suit is substantially similar to an action filed by Harris County on October 13, 2025 in the D.D.C. *See* Complaint, *Harris County*, No. 1:25-cv-03646 (D.D.C.), ECF No. 1 ("Harris Compl."), attached as Exhibit A. Harris County sued EPA, its Administrator, and an

EPA award official, challenging EPA's purported "decision to eliminate" the SFA grant program, just as this lawsuit does. *Id.* ¶ 11. In its complaint, Harris County asserts similar APA, constitutional, and *ultra vires* claims as Plaintiffs do here. *Compare* Compl. ¶¶ 168–249 *with* Harris Compl. ¶¶ 91–109. Harris County also seeks nearly identical relief. Like Plaintiffs, Harris County asks the court to declare EPA's actions unlawful, vacate and set aside EPA's actions, and enjoin EPA from implementing its decision and from reobligating or otherwise expending the grant funds. *See* Harris Compl. at 30–31.[1]

The background relevant to each suit is also the same. In 2022, Congress amended Section 134 of the Clean Air Act to appropriate $27 billion to EPA to establish a program called the Greenhouse Gas Reduction Fund ("GGRF"), formerly codified at 42 U.S.C. § 7434 (2024). Congress authorized $7 billion of the total appropriation to EPA to make grants to eligible recipients "to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies … and to carry out other greenhouse gas emission reduction activities." 42 U.S.C. § 7434(a)(1). Congress required EPA to obligate these funds no later than September 30, 2024. *Id.* EPA called the grant program Solar for All ("SFA"). Compl. ¶ 2.[2]

---

[1] Harris County also designated its suit as related to an earlier-consolidated matter, *Climate United Fund v. Citibank, N.A.*, No. 1:25-cv-00698 (D.D.C.). In that case, grantees and subgrantees with awards under two other EPA programs, known as the National Clean Investment Fund ("NCIF") and Clean Communities Investment Accelerator ("CCIA"), filed suit against EPA to enjoin the agency from terminating their grant awards. Defendants challenged this relatedness designation, as the factual and legal issues in *Climate United* vary from those asserted in *Harris County* and this case. *See Harris County*, No. 1:25-cv-03646 (D.D.C.), ECF No. 16 ("Defs. Obj. to Not. of Rel. Cases"). The court in *Harris County* has not ruled on this issue.

[2] The other two programs, NCIF and CCIA, received a combined appropriation of $26.97 billion, *see* 42 U.S.C. § 7430(a)(2)–(3). Congress also authorized $30 million for EPA's administrative costs. *Id.* § 7430(a)(4).

3

On April 22, 2024, EPA announced its selection of 60 eligible recipients of SFA grants. Compl. ¶¶ 49–50; *see also* Harris Compl. ¶¶ 37–39. EPA executed grant agreements with each grantee by August 2024, obligating the entire $7 billion by the September 30th deadline, and EPA amended those agreements in December 2024. Compl. ¶ 49; *see also* Harris Compl. ¶ 39. EPA awarded each grant ("SFA Grant") under materially identical terms. For example, in each SFA Grant, EPA agreed "to cost-share 100.00% of all approved budget period costs" up to the amount awarded to the recipient. *See, e.g., Harris County*, No. 1:25-cv-03646 (D.D.C.), ECF No. 12-5 ("Harris County SFA Grant") at 1. In exchange, each grantee agreed to, *inter alia*: (i) "comply with the current EPA General Terms and Conditions," *id.* at 4; (ii) "comply with the statutory requirements of Section 134 of the Clean Air Act," *id.* at 34; (iii) implement "its EPA-approved Solar for All Workplan," *id.* at 22; and (iv) adhere to numerous applicable regulations within 2 C.F.R. Part 200, *see, e.g.*, *id.* at 22–23; *see also* Compl. ¶ 55 ("[T]he workplans set forth, among other things, proposed grant-funded plans for solar design and installation, program administration and technical services, and anticipated increases in staffing by sub-awardees.").

On July 4, 2025, Congress enacted the One Big Beautiful Bill Act, Pub. L. No. 119-21, § 60002, 139 Stat. 72, 154 (2025) (the "OBBBA"). Section 60002 of the OBBBA "repealed" Section 134 of the Clean Air Act and "rescinded" all "unobligated balances of amounts made available to carry out that section," which included the remainder of the $30 million appropriated to EPA to administer the GGRF grant programs. *Id.*

On August 7, 2025, EPA terminated all SFA Grants. Each SFA grantee received "a letter notifying them that EPA had 'made the decision to terminate the SFA [Solar for All] program' in its entirety." Compl. ¶ 85 (quoting termination memorandum); *see also* Harris Compl. ¶ 69 ("[EPA] sent every SFA grantee—including Harris County—a purported 'Termination' notice

4

stating that EPA had decided to terminate Solar for All altogether."). In these memoranda, EPA explained that the "OBBBA repeals the underlying authority for the Solar for All program at Section 134 of the Clean Air Act, 42 U.S.C. 7434, and rescinds unobligated amounts to carry out Section 134." *See, e.g.,* ECF No. 1-1 ("Cap. Good Fund Term. Memo."); *see also Harris County*, No. 1:25-cv-03646 (D.D.C.), ECF No. 12-6 ("Harris County Term. Memo."). Accordingly, EPA made the decision to terminate the SFA program and existing grants. Cap. Good Fund. Term. Memo. at 1.

On October 24, 2025, Harris County moved for emergency preliminary relief, asking the court to enjoin EPA from implementing its decision to "eliminate" the SFA "program" and from deobligating or otherwise expending SFA grant funds. *Harris County*, No. 1:25-cv-03646, (D.D.C.), ECF No. 12 ("Harris PI Mot."). Defendants sought an extension to respond to the motion, *id.* ECF No. 13, and Harris County then moved for a temporary restraining order, *id.* ECF No. 14 ("Harris TRO Mot."). The court granted Defendants' request for more time to respond. Defendants filed their opposition to Harris County's motions on November 10, 2025. *Id.* ECF No. 20 ("Opp."). In support of their opposition, Defendants attached an EPA declaration stating that all SFA grant funds would remain in the same Treasury account through September 30, 2031, and EPA would stay administrative proceedings through the issuance of an order on the PI motion. *See id.* ECF No. 21-1 ("Treml Decl."). Following this filing, Defendants also agreed to stay the administrative process, including the closeout of Harris County's SFA Grant, through the end of the litigation. Harris County then withdrew its PI motion. *Id.* ECF No. 21.

In addition to filing district court complaints, Plaintiffs and Harris County simultaneously filed nearly identical "protective" petitions in the D.C. Circuit, seeking direct review in the Court of Appeals to the extent the Clean Air Act requires it. *See Rhode Island AFL-CIO v. U.S. Env't*

5

*Prot. Agency*, No. 25-1216 (D.C. Cir.); *Harris County v. U.S. Env't Prot. Agency*, No. 25-1217 (D.C. Cir.). The D.C. Circuit, on its own motion, consolidated the petitions. *See* Order, *Rhode Island AFL-CIO*, No. 25-1216 (D.C. Cir.), ECF No. 2141498. And the plaintiffs jointly moved to hold the petitions in abeyance pending the district court litigation. *Id.* ECF No. 2145408.[3]

## ARGUMENT

This action should be transferred to the D.D.C. under 28 U.S.C. § 1404(a) for the interests of justice and for the convenience of the parties and the witnesses. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The overall "purpose of the section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted). "To this end it empowers a district court to transfer 'any civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice." *Id.* District courts therefore have broad discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Blinzler v. Marriott Int'l, Inc.*, 857 F. Supp. 1, 3 (D.R.I. 1994) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)).

---

[3] Two other SFA-related cases are pending in other courts. As noted above, in one case, 23 state-representative SFA grantees filed suit against the EPA in the Western District of Washington, asserting claims that are similar to those asserted here and in *Harris County*. *See Arizona v. U.S. Env't Prot. Agency*, No. 2:25-cv-02015 (W.D. Wash. filed Oct. 16, 2025). Defendants moved to transfer that case to the D.D.C. *See id.* ECF No. 97. That motion remains pending. In another case, the same 23 SFA grantees (and Nevada) filed suit in the Court of Federal Claims under the Tucker Act seeking breach-of-contract damages. *Md. Clean Energy Ctr. v. United States,* 1:25-cv-1738 (Fed. Cl. filed Oct. 15, 2025).

In exercising this discretion, courts consider three requirements of section 1404(a): (1) the "availability of an alternative forum in which the plaintiff may litigate its claim"; (2) that "the alternative forum is more convenient for the parties and the witnesses"; and (3) that "transfer will serve the interests of justice." *Elbalah v. Republic Ins. Co.*, 879 F. Supp. 3, 4 (D.R.I. 1995) (citing cases). The Court should exercise its discretion to transfer the case to the D.D.C., as all three requirements are met.

### I.  The D.D.C. is an Available Alternative Forum to Adjudicate the Issues.

The D.D.C. is an available alternative forum to adjudicate this case, including the issues of jurisdiction and standing. "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Vitalife, Inc. v. Omniguide, Inc.*, 353 F. Supp. 3d 150, 156 (D.P.R. 2018) (citation omitted). As for venue, under 28 U.S.C. § 1391(e)(1), a civil action against an agency of the United States may be brought in a judicial district where any defendant resides. As recognized in Plaintiffs' summons, *see* ECF No. 1-4 and 1-7, EPA's headquarters is located at 1200 Pennsylvania Avenue in Washington, D.C. As for subject matter jurisdiction, courts have considered whether the destination court would have jurisdiction to hear the case. *Gray v. Derderian*, 400 F. Supp. 2d 415, 431 (D.R.I. 2005) (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962) and *Mulcahy v. Guertler,* 416 F.Supp. 1083, 1085 (D.Mass.1976)). In this case, no district court has jurisdiction if the plaintiffs lack Article III standing, as Plaintiffs do here. *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). And no district court has jurisdiction to adjudicate grant termination claims, which instead lie exclusively with the Court of Federal Claims, if anywhere. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025); *Dep't of Educ. v. California*, 604 U.S. 650 (2025). However,

7

these jurisdictional and standing issues should be decided by a common court, rather than through potentially conflicting and piecemeal litigation in multiple districts.[4]

## II. The D.D.C. is a More Convenient Forum for the Parties and (If Applicable) the Witnesses.

The D.D.C. is more convenient for most Plaintiffs and much more convenient for Defendants. Although "the burden is on the movant to make a strong showing that transfer of venue is appropriate under the circumstances, … [t]his burden is lightened when a plaintiff has not brought suit on his 'home turf' or at the site of the activities at issue in the law suit." *McEvily v. Sunbeam-Oster Co., Inc.*, 878 F. Supp. 337, 344 (D.R.I. 1994) (internal citations omitted). Here, of the eight plaintiffs, six plaintiffs—the Atlanta homeowner, the District of Columbia nonprofit, the Georgia-based solar installer, the Georgia-based small business, the Pittsburgh-based solar installer, and the Indiana-based advocacy group—are closer to Washington, D.C. than Rhode Island. *See* Compl. ¶¶ 22–29. And the activities at issue—EPA's decisions related to the SFA Grants—took place in the District of Columbia, where EPA is headquartered. Indeed, all Defendants and their Department of Justice counsel are located in the District of Columbia. This factor therefore weighs in favor of transfer to the D.D.C. *See Multibene Ingredients Oy Ltd. v. Sturm Foods Inc.*, 658 F. Supp. 2d 250, 255 (D. Me. 2009) (transferring case because, *inter alia*, "[i]f the case is transferred, the burden on Defendant will be eliminated, while the hardship of travel on Plaintiff will be only marginally increased").

---

[4] And, as noted above, Plaintiffs filed "protective" petitions for direct review in the Court of Appeals for the D.C. Circuit out of an apparent concern that the Clean Air Act may require suit be filed there. *See Arizona v. Env't Prot. Agency*, No. 25-1218 (D.C. Cir.). That case is currently stayed pending the resolution of the district court litigation. Transferring the suit will ensure a common court can resolve this jurisdictional question consistently across each case.

The convenience of the forum to the witnesses and the access to evidence has less relevance here. Plaintiffs raise claims under the APA and the U.S. Constitution, challenging Defendants' decision to end the SFA grant program. *See* Compl. ¶¶ 168–249. Defendants' position is that Plaintiffs cannot bring claims challenging SFA grant terminations—ultimately seeking to reinstate SFA Grants—to district court. And Defendants also take the position that because Plaintiffs do not have an SFA Grant with the government, *inter alia*, they lack standing to bring claims seeking to reinstate the SFA Grant program. However, to the extent a district court decides it has jurisdiction under the APA to hear Plaintiffs' claims and that Plaintiffs have standing to bring them, that statute limits review to "'the administrative record already in existence, not some new record made initially in the reviewing court.'" *Town Of Winthrop v. F.A.A.*, 535 F.3d 1, 14 (1st Cir. 2008) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). The district court's "factfinding capacity" is thus "typically unnecessary" to review agency decision-making. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Because review in this case is limited to the administrative record, which EPA can transmit electronically, the location of witnesses or physical documents matters little, if at all.[5]

Plaintiffs also will suffer no prejudice or inconvenience by a transfer to the D.D.C. because this case and *Harris County* are in the earliest phases of litigation. Plaintiffs and Harris

---

[5] To the extent Plaintiffs rely on witness testimony to support their claims, the consideration of their location would be subsumed with the consideration of the convenience of the forum. And, as stated above, most Plaintiffs are located closer to the District of Columbia than Washington State. The evidentiary factor should therefore be given limited weight. *See Ecological Rts. Found. v. U.S. Env't Prot. Agency*, No. 19-CV-04242-RS, 2019 WL 5295124, at *4 (N.D. Cal. Oct. 18, 2019) (considering transfer motion and giving "limited weight" to the location of two possible party-witnesses, as "their preferences are already reflected by the plaintiffs' choice of forum" and "both parties acknowledge that this case will likely be resolved by dispositive motion, rendering it unlikely that [they] would ever need to appear in court").

County filed suit about six weeks ago. *See* Compl. (filed Oct. 6, 2025); Harris Compl. (filed Oct. 13, 2025). And the next deadline in this case is Defendants' production of the administrative record on January 16, 2026, pending the Court's approval of this proposed schedule. *See* ECF No. 26. In other words, now is the best time for this case to be transferred, as this case can be consolidated with *Harris County*, and all parties can work together on an agreed production and briefing schedule.

### III.     Transfer to the D.D.C. Will Serve the Interests of Justice.

Transfer is also in the interests of justice, as it will allow for the consolidation of two (if not three) substantially similar cases in a district that has a strong local interest in the applicable legal and factual issues. "Obvious concerns arise when actions involving the same parties and similar subject matter are pending in different federal district courts: wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs." *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). And, admittedly, "[w]here the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer." *Id*. "But where the overlap between two suits is less than complete"—like here, where Harris County is an SFA grantee and Plaintiffs are not SFA grantees—"the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id*. Those factors weigh in favor of transfer.

Both this case and *Harris County* involve substantially similar claims, the same defendants, the same SFA grant program, and the same agency rationale for terminating the SFA Grants at issue. *See supra* Backround. Permitting this lawsuit and *Harris County* to proceed

10

simultaneously in two different fora will duplicate the time and resources required of the parties and the judicial system to resolve these disputes. As framed by the Supreme Court, "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).

Moreover, permitting nearly identical lawsuits to be litigated separately in different jurisdictions could lead to "piecemeal litigation" and "conflicting judgments." *TPM Holdings*, 91 F.3d at 4. This problem is particularly concerning here, where the plaintiffs have each requested injunctive relief that would affect all SFA Grants—not just the grants specific to Plaintiffs or Harris County. *See* Compl. at 46 (asking the Court to "[i]ssue injunctive relief directing EPA to reinstate the Solar for All grant program"); Harris Compl. at 30 (asking the court to "[e]njoin Defendants from … shutting down Solar for All").[6] One court could order injunctive relief while the other does not, or two courts could order inconsistent forms of injunctive relief making it impossible for Defendants to comply with both orders. That is why Defendants moved to transfer the *Arizona* case to the D.D.C., as those 23 state and government plaintiffs seek the same relief that Harris County and Plaintiffs seek here. *See* Motion to Transfer, *Arizona*, No. 2:25-cv-02015 (W.D. Wash.), ECF No. 97. Indeed, three Plaintiffs here—as residents of Rhode Island, Pennsylvania, and the District of Columbia—could be affected by an order governing the SFA Grants of those three state and government entities.

---

[6] This scenario, of course, should not occur in light of *Trump v. CASA, Inc.,* 606 U.S. 831 (2025), in which the Supreme Court held that remedies that bar the enforcement of "a law or policy against *anyone*" fall "outside the bounds of a federal court's equitable authority under the Judiciary Act." 606 U.S. at 847.

Finally, the D.D.C.'s familiarity with administrative law and its local interest in this case favor transfer. Although this Court no doubt has significant experience with administrative law cases, most federal agencies are headquartered in the District of Columbia, and most lawsuits against them are filed there. For example, as of March 31, 2025, 3,080 civil cases involving the federal government were pending in the District of Columbia, while 95 civil cases involving the federal government were pending in the District of Rhode Island. *See* U.S.Courts.Gov, Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2025), https://www.uscourts.gov/sites/default/files/document/fjcs_c1_0331. 2025.xlsx. Likewise, the District of Columbia has a stronger local interest in this action compared to Rhode Island because the administrative process occurred in the District of Columbia and the federal defendants reside there. *See Elbalah*, 879 F. Supp. at 5 (granting transfer motion because, *inter alia*, "New York has an interest in resolving New York controversies in New York"). These factors also weigh in favor of transfer.

Accordingly, to avoid duplication of effort, inefficient litigation of similar cases in two districts, and the potential for inconsistent orders, and to serve the local interests of the District of Columbia, this case should be transferred to the D.D.C. where it can be consolidated with *Harris County* and any other substantially similar case before one district court judge.

## CONCLUSION

For the foregoing reasons, Defendants ask this Court to transfer the case to the U.S. District Court for the District of Columbia.

Dated: December 1, 2025

                                                  BRETT A. SHUMATE
                                                  Assistant Attorney General

       Civil Division

       KIRK T. MANHARDT
       Director

       KEVIN P. VANLANDINGHAM
       Assistant Director

       /s/___Tiffiney F. Carney____
       TIFFINEY F. CARNEY
       I-HENG HSU
       Trial Attorneys
       U.S. Department of Justice, Civil Division
       Commercial Litigation Branch
       1100 L Street NW
       Washington, DC 20005
       (202) 598-7521
       tiffiney.carney@usdoj.gov
       i-heng.hsu@usdoj.gov

       *Attorneys for Defendants*

## **STATEMENT UNDER LR Cv 7(c)**

Defendants do not request oral argument to resolve this Motion to Transfer Venue.