IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **RHODE ISLAND AFL-CIO**<br><br>**RHODE ISLAND CENTER FOR JUSTICE**<br><br>**ANH NGUYEN**<br><br>**SOLAR UNITED NEIGHBORS**<br><br>**SUNPATH CONSULTING LLC** d/b/a **SUNPATH SOLAR**<br><br>**2KB ENERGY SERVICES, LLC**<br><br>**ENERGY INDEPENDENT SOLUTIONS**<br><br>**BLACK SUN LIGHT SUSTAINABILITY**<br><br>*Plaintiffs,*<br><br>v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;**<br><br>**LEE ZELDIN**, in his official capacity as Administrator of the United States Environmental Protection Agency;<br><br>*Defendants.* | Case No. 1:2025-cv-00510-MSM-PAS<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE** |

## INTRODUCTION

Rhode Island AFL-CIO, the Rhode Island Center for Justice, and the other Plaintiffs have filed this action to obtain relief from the sweeping harms Defendants inflicted on intended beneficiaries of the Solar for All program—including homeowners, nonprofit community organizations, and solar businesses—by suddenly terminating the program. Defendants now seek to transfer this case to the District of Columbia and consolidate it with importantly different cases filed by EPA grant recipients. At the same time, as explained below, they are arguing to the District of Columbia court that it lacks jurisdiction. Rather than asking this Court to dismiss, Defendants can only be seeking to transfer the case to another court in the hopes that their preferred forum will be more likely to do so.

The Court should reject this attempt at forum shopping. This case was filed first, in the Rhode Island Plaintiffs' home forum. Moreover, this case is different. Unlike the plaintiff in the District of Columbia case, Plaintiffs have no Solar for All grant agreements with EPA. As such, they represent different interests, face different harms, and their case presents different facts and legal issues than the case to which Defendants seek to yoke this one. Defendants offer no legitimate justification to transfer this matter beyond a desire to lump all Solar for All litigation together, regardless of the fundamental differences between the cases, and then, at the same time, suggest that no district court forum is actually appropriate. The Court should deny Defendants' motion.

## BACKGROUND

### A. The Solar for All Program and Its Termination

In 2022, Congress appropriated $7 billion to EPA under the Inflation Reduction Act to enable low-income and disadvantaged communities to benefit from distributed solar and other

zero-emission technologies. 42 U.S.C. § 7434(a)(1). EPA awarded grants totaling $7 billion to 60 recipients nationwide, obligating all funds by the statutory deadline of September 30, 2024. Compl. ¶¶ 46-57.

On July 4, 2025, Section 60002 of H.R. 1 was enacted, which repealed the Solar for All statutory authorization going forward and rescinded funding balances that were "unobligated" as of July 3, 2025. Pub. L. No. 119-21, § 60002, 139 Stat. 72, 154 (2025). By its plain terms, Section 60002 did not rescind the $7 billion in obligated grant funds. *See* Compl. ¶¶ 72-82.

Nevertheless, on August 7, 2025, EPA Administrator Lee Zeldin terminated the entire Solar for All program and began clawing back the $7 billion in obligated funds. Compl. ¶¶ 83-99.

### B. This Lawsuit and the Later-Filed Solar for All Litigation

This case was filed on October 6, 2025, making it the first case challenging the termination of the Solar for All grant program to be filed in any court. Doc. 1. Plaintiffs received no EPA grants under the Solar for All program, but rather they are its intended beneficiaries. They are a Rhode Island labor organization, Rhode Island AFL-CIO; a Rhode Island legal aid organization, Rhode Island Center for Justice; an individual homeowner seeking access to solar energy to reduce costs; nonprofit organizations dedicated to assisting low-income families with affordable energy; and solar consultants and installers. All these Plaintiffs should have continued to benefit directly from the Solar for All program's provision of new sources of energy throughout the nation and its electricity cost savings. Compl. ¶¶ 21-30.

After this case was filed, on October 13, 2025, a recipient of an EPA Solar for All grant, Harris County, Texas, filed suit in the District of Columbia challenging the termination. *Harris County v. U.S. Env't Prot. Agency*, No. 1:25-cv-03646 (D.D.C.) (complaint at Doc. 27-1). On

3

October 16, 2025, a coalition of state grantees filed a case in Washington State. *State of Arizona v. U.S. Env't Prot. Agency*, No. 2:25-cv-02015 (W.D. Wash.).

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court has discretion to transfer a civil action to another district "[f]or the convenience of parties and witnesses, in the interest of justice." But transfer is discretionary and requires an "'individualized, case-by-case consideration of convenience and fairness.'" *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (citation omitted). There is a "strong presumption in favor of the plaintiff's choice of forum," *id.* at 13 (citation omitted), and a "plaintiff's forum choice 'should rarely be disturbed,'" *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) (citation omitted). Moreover, courts in this District have long recognized a further "presumption in favor of the plaintiff's choice of its home forum." *Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d 316, 323 (D.R.I. 1998) (citing *Ryan, Klimek, Ryan Partnership v. Royal Ins. Co. of America,* 695 F.Supp. 644, 647 (D.R.I. 1988)).

To establish the basis for transfer, the moving party "bears the heavy burden of establishing that an adequate alternative forum exists and that 'considerations of convenience and judicial efficiency *strongly* favor litigating the claim in the second forum.'" *Adelson v. Hananel*, 510 F.3d 43, 52 (1st Cir. 2007) (quoting *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000)). To meet that "heavy burden," Defendants, as the moving party, "must show that the assessment of the relevant public and private interests favors the case being litigated in the foreign forum to such a degree that it suffices to overcome the presumption that the plaintiff is entitled to bring her case in her home forum." *Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 141-142 (1st Cir. 2021) (citation and quotation marks omitted). Transfer is "not appropriate when the

4

consideration of the private and public interest factors reveals that, as between the plaintiff and the moving party, the relative burdens of litigating the case in the plaintiff's home forum are in 'equipoise,' or only marginally favor litigating it in the alternative forum." *Id*. at 141 (internal citation and quotation marks omitted).

**ARGUMENT**

Defendants have not established any basis to transfer this first-filed case away from Plaintiffs' home forum. Indeed, Defendants' motion contains not one word about any burden to them from litigating this case here, let alone any showing that such burden would outweigh the strong presumption in favor of Plaintiffs' forum.

On the contrary, Defendants admit their objective in seeking transfer is to consolidate this case with those filed by primary grant recipients. That outcome would not serve the interests of justice, and instead would muddle together disparate plaintiffs with different interests and injuries, while at the same time prejudicing Plaintiffs in this case by subjecting them to Defendants' argument that challenges to the termination of Solar for All should be considered contract disputes that belong in the Court of Federal Claims.

Indeed, Defendants' strategy means they are asking this Court to transfer the case to the D.C. court at the same time they are actively arguing the D.C. court lacks jurisdiction pursuant to the Tucker Act. *See* Defs.' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction and TRO, *Harris County v. EPA*, No. 1:25-cv-03646-TSC, Doc. 20 (attached as Exhibit 1), at pp. 16-24. The only reason Defendants could have for asking this Court to transfer, rather than to dismiss this case under their Tucker Act theory, is that they believe the D.C. court will be a more favorable forum for them to obtain dismissal. That is forum-shopping, pure and simple. *See, e.g.*, *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 694

5

F. Supp. 2d 48, 54 (D. Mass. 2010), (denying transfer and noting that "[c]ourts are justly wary of . . . . thinly disguised efforts at forum shopping or seeking delay in the hope that some court somewhere will render a decision that would favor the moving party"), *rev'd on other grounds*, 647 F.3d 377 (1st Cir. 2011).

This case about the interests of third-party beneficiaries of the program is unique and should remain where the Rhode Island AFL-CIO and Rhode Island Center for Justice filed it, in Rhode Island. Defendants do not dispute that venue is proper in the District of Rhode Island: this is a "civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity;" the Rhode Island AFL-CIO and Rhode Island Center for Justice are both plaintiffs based in Rhode Island; a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in the District of Rhode Island; and no real property is involved in this action. *See* 28 U.S.C. §§ 1391(b)(2), (e)(1).

### 1. Plaintiffs' Choice of Their Home Forum Receives Strong Deference

Plaintiffs Rhode Island AFL-CIO and Rhode Island Center for Justice's choice of their home forum weighs strongly against transfer. There is "a strong presumption in favor of a plaintiff's choice of its home forum," *Earvision, Inc. v. Wyman*, No. CA 11-615S, 2012 WL 1986320, at *3 (D.R.I. May 3, 2012), *report and recommendation adopted*, No. CA 11-615 S, 2012 WL 1982463 (D.R.I. June 1, 2012), and a "plaintiff's forum choice 'should rarely be disturbed,'" *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) (citation omitted). The strong presumption in favor of a plaintiff's choice of its home forum is doubled here, where Rhode Island is home to not one but two Plaintiffs.

Both of these organizations invested very significant amounts of time and labor in participating in Rhode Island's application for the Solar for All grant program. Rhode Island

6

AFL-CIO invested substantial resources developing workforce training programs and building apprenticeship pipelines that depended on Solar for All projects. Compl. ¶¶ 59-61, 100-01. The termination eliminates hundreds of union construction jobs and jeopardizes the union's ability to address its looming retirement crisis. *Id.* Rhode Island Center for Justice entered into agreements to help expand solar access for low-income Rhode Islanders, hired additional staff, and expanded its work at the Public Utilities Commission. Compl. ¶ 62. The termination frustrates its core mission of securing affordable, reliable energy for low-income families. Compl. ¶ 102.

Moreover, termination of the program affects the economy of the entire state, as well as its ability to meet the clean energy requirements of the Rhode Island Act on Climate, R.I. Gen. Laws Chapter 42-6.2, enacted in 2021, which requires the reduction of greenhouse gas emissions, with escalating reduction targets to be accomplished by 2030 and 2050. This Court has an interest in ensuring that Rhode Island's citizens, businesses, and community organizations are not unlawfully burdened by Defendants' termination of Solar for All. *See*, *e.g.*, *JKA, Inc. v. Anisa Int'l Inc.*, No. CIV.A. 07-123S, 2008 WL 4949126, at *11 (D.R.I. Nov. 13, 2008) (finding the State of "Rhode Island has a strong interest in this litigation as Plaintiff is a Rhode Island corporation and acts of infringement have occurred in Rhode Island.").

In sum, Plaintiffs' choice of a forum that is home to two of them weighs heavily in favor of denying Defendants' motion.

### 2. This Case Was Filed Before the Primary Grantees' Cases and Involves Different Parties and Different Claims

For this Court's context, Plaintiffs note that Defendants have also moved to transfer the states' Western District of Washington case to the District of Columbia, and in that motion (attached as Exhibit 2) they make several arguments that highlight the weakness of their argument here.

7

First, Defendants argue to the Western District of Washington court that "the first-to-file rule" supports transfer of the states' case because Harris County's case was filed "three days before" the states' case. Ex. 2 at 7–9. However, *this case* was the first to be filed, on October 6, seven days before Harris County filed on October 13. Understandably, Defendants have dropped any "first-filed" argument from their motion to this Court, but its absence only confirms that this *actually*-first-filed case should remain here.

Second, Defendants argue that the states' case should be transferred and consolidated with Harris County's because "[i]n both actions, the plaintiffs are recipients of SFA ["Solar for All"] Grants, which were awarded and amended by EPA at the same time under the same SFA grant program," and "the terms of each grant are materially identical." *Id.* at 8. Here, by contrast, Plaintiffs received no EPA grants. They do not challenge the termination of any individual grant. And the terms of any grant are irrelevant to Plaintiffs' claims, all of which challenge the termination of the program as a whole. Defendants' argument to the Western District of Washington only serves to highlight why this case—brought by entirely different plaintiffs who have no grant agreements with EPA and who are injured by the termination of the program in ways that are different from the grantees—should not be transferred.

### 3. Defendants Have Not Met Their Burden to Transfer This Case

In their motion to this Court, Defendants have not overcome the "strong presumption" in favor of Plaintiffs' choice of this district. Puzzlingly, Defendants suggest that their burden in seeking transfer should be "lightened when a plaintiff has not brought suit on his 'home turf,'" but that suggestion fails because not one but two plaintiffs *have* sued on their "home turf." Doc. 27 at 8 (quoting *McEvily v. Sunbeam-Oster Co., Inc.*, 878 F. Supp. 337, 344 (D.R.I. 1994)).

In considering a request to transfer under § 1404(a), a court should consider whether certain private and public interest factors weigh in favor of or against the transfer. *Wilson v. United States*, No. CA 11-117 S, 2011 WL 6736057, at *2 (D.R.I. Dec. 1, 2011), *report and recommendation adopted*, No. CA 11-117 S, 2011 WL 6736222 (D.R.I. Dec. 21, 2011) (citing *Boothroyd Dewhurst, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.,* C.A. No. 92–0075 P, 1993 WL 385713 (D.R.I. July 8, 1993)). Here, all these factors weigh against transfer.

### a. Transfer Would Not Serve the Parties' Private Interests

Defendants do not even try to meet their "burden of proof." *Astro-Med*, 591 F.3d at 13. They note only that "Defendants and their Department of Justice counsel are located in the District of Columbia." Doc. 27 at 8. Defendants make no attempt at showing that litigating this case in the District of Rhode Island would be burdensome in any way. Defendants' mere location in Washington, D.C. cannot outweigh the fact that multiple plaintiffs are based in the District of Rhode Island, and it is Plaintiffs who are entitled to the "strong presumption in favor" of their choice of forum. *Astro-Med, Inc.*, 591 F.3d at 13. "Transfer is inappropriate if it merely shifts inconvenience from one party to another. Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *JKA, Inc.*, 2008 WL 4949126, at *11 (quoting *Zahn v. Yucaipa Capital Fund,* 218 B.R. 656, 678 (D.R.I. 1998)).

As Defendants acknowledge, Doc. 27 at 9, the location of witnesses and evidence has little relevance because this case challenges agency action and likely will be decided on the administrative record. Moreover, Defendants argued in another case that "[i]n the context of ultra vires and constitutional separation of powers claims, there are no questions of fact, because whether or not a statute or the Constitution grants [the Executive Branch] the power to act in a

9

certain way is a pure question of law." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 185–86 (D.D.C. 2025) (quoting Defs.' Opp'n, ECF No. 84, at 23); *see also California v. Trump*, No. 25-cv-10810-DJC (D. Mass. May 9, 2025) (mem.) (attached as Exhibit 3) (denying transfer motion and noting the government did not "identify any witnesses and do[es] not explain why witnesses are necessary"). This factor does not help Defendants at all.

Meanwhile, the location of defense *counsel*, *see* Doc. 27 at 8, is irrelevant. *See, e.g.*, *United States ex rel. Ondis v. City of Woonsocket*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." (quoting *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004))); *Bowen v. Elanes N.H. Holdings, LLC*, 166 F. Supp. 3d 104, 108 (D. Mass. 2015) ("[C]ourts do not assess the convenience of counsel when determining whether to transfer under § 1404(a).").

Defendants also argue Plaintiffs will not be prejudiced by a transfer to the D.C. District Court because the various cases are at an early phase of litigation. Doc. 27 at 9–10. First, arguing lack of prejudice does not help Defendants meet their burden, which they have failed to do here. But more importantly, Plaintiffs *will* be prejudiced by having their case tied to those of the grantees, since they have different interests and injuries, and Defendants have made clear they will argue these cases are contract disputes over which the district courts lack jurisdiction pursuant to the Tucker Act—an argument which, as discussed below, does not apply to Plaintiffs. *Id.* at 9.

Defendants' primary argument in the District of Columbia litigation is that Harris County, a direct recipient of a Solar for All grant, should properly have brought its claim in the

10

Court of Federal Claims as a contract dispute. *See* Ex. 1, Defs.' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction and TRO, at pp. 16-24. Plaintiffs here, however, are third parties with no direct contractual relationship with EPA. As such, Defendants' main defense in the Harris County case has no application here. As the Ninth Circuit recently explained in another challenge brought by plaintiffs who were not direct grant recipients:

> The bottom line is that Plaintiffs have no contract with the Government. They do not invoke any contractual terms as the basis for their action. Nor do they seek a contractual remedy from the Government. Rather, Plaintiffs seek declaratory and injunctive relief requiring compliance with the statutory obligations set out by Congress and the regulatory obligations set forth by Defendants themselves. Thus, as the district court put it, "Plaintiffs' claims have no business before the [Court of Federal] Claims."

*Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 155 F.4th 1099, 1100 (9th Cir. 2025) (denying rehearing en banc) (quoting *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 780 F. Supp. 3d 897, 917 (N.D. Cal. 2025)). Plaintiffs' status as third parties with no EPA grant agreements is a critical difference that makes this case unique and confirms that transfer and consolidation are inappropriate. Defendants are therefore incorrect where they assert that this lawsuit is "substantially similar" to Harris County's. Doc. 27 at 1.

As a related point, Defendants in this case dispute Plaintiffs' standing based on the fact that they are not direct grantees. Doc. 27 at 9. This argument is meritless—Plaintiffs' Complaint sets out in detail the concrete ways they have been harmed by Defendants' termination of the program—but it presents a legal issue that is distinct from the Harris County case, where Defendants only challenge redressability. *See* Ex. 1 at pp. 24-27. There are other differences too. Harris County asserts a claim that Defendants' action was pretextual, *see* Doc. 27-1 at ¶¶ 18, 77,

96(b), which Plaintiffs here do not. Finally, Harris County has sued Devon Brown, an EPA Award Official, who is not a defendant in this case.

All these differences further weigh against the transfer and consolidation Defendants seek, because doing so would confuse the issues and make it difficult for Plaintiffs to assert their unique interests. Defendants' attempt to lump these cases together in their preferred forum is highly prejudicial to Plaintiffs.

### b. Transfer Is Not in the Interest of Justice and the Public Interest

As discussed above, the public interest favors allowing Rhode Island plaintiffs to litigate in their home forum. And the public interest will be served by keeping this case here because doing so will help ensure that the high-level agency action at issue—which terminated $7 billion in funding for important projects to bring renewable, reliable electricity to disadvantaged communities across the country—is subject to judicial review, by allowing third parties with no federal contracts to pursue this case untethered from the primary grantees' litigation. In the grantees' case, by contrast, Defendants seek to shunt review to the Court of Federal Claims and treat the claims as contractual disputes, which would allow Defendants to evade review of their program-wide termination decision.

For these reasons, Defendants' stated rationale that transfer would allow this case to be consolidated with the grantees' cases in no way serves the interests of justice. Plaintiffs have suffered different harms and represent different interests than those of the primary grantees. Defendants would doubtless prefer to combine this third-party challenge with the grantees' cases in the hopes that their Tucker Act argument could insulate the program termination decision from judicial review across the board. But that would not serve "the interests of justice," and this Court should not facilitate this prejudicial strategy.

Likewise, Defendants raise the possibility of "inconsistent" rulings, Doc. 27 at 11, but the unique status of the third-party Plaintiffs in this case means that separate rulings—for example, that Plaintiffs in this case could proceed in District Court while a grantee's case should be heard by the Court of Federal Claims—would not be "inconsistent." To try to bolster their argument about supposed "inconsistency," Defendants cite *TPM Holdings, Inc. v. Intra-Gold Industries, Inc.* as raising "concerns" about conflicting judgment and wasted resources, but that decision (which did not concern a transfer motion or evaluate the standards for transfer) discussed "actions involving the *same parties* . . . pending in different federal district courts." 91 F.3d 1, 4 (1st Cir. 1996) (emphasis added). Defendants attempt to present a quotation discussing situations where "overlap between two suits is less than complete" as somehow applicable to situations where the *parties* are not the same, Doc. 27 at 10 (quoting *TPM Holdings*, 91 F.3d at 4), but that was not what *TPM* addressed. Instead, it dealt with "similar subject matter" in separate actions involving "the same parties." *TPM Holdings*, 91 F.3d at 4.

Similarly, Defendants rely on an inapposite Supreme Court quotation from *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960) (cited in another Supreme Court case involving choice of law issues not relevant here). Doc. 27 at 11. But in *Continental Grain*, the underlying litigation involved "precisely the same issues," "the same parties," "the substance of what had to be done to adjudicate the rights of the parties was not different at all," and "[t]he witnesses were identical." 364 U.S. at 21, 26. Here, not only do the jurisdictional and substantive issues differ, but the parties are importantly different.

These differences mean that the interests of justice favor keeping this case where it is. In a situation strikingly similar to this one, where the government moved to transfer a challenge to an executive branch action from this Circuit to the District of D.C. and there were private

13

plaintiffs in one case and state plaintiffs in the other, the court denied the transfer motion, explaining that

> [T]he interest of justice does not favor transfer in this case. Although, as Defendants note, the issues raised in this matter overlap with those before the DC Court, the *differences between the matters counsel against consolidation. First, the parties are not the same* — while the Plaintiffs before this Court are States, the DC Cases were brought by private parties. Likewise, while some defendants in the matters overlap, they do not all overlap.

*California v. Trump*, No. 25-cv-10810-DJC (D. Mass. May 9, 2025) (Ex. 3) (emphasis added). All these differences between the parties are present here and likewise weigh against transfer. The court also noted differences between the claims in the two cases, which is also the case here. *Id.* These differences make Defendants' request to transfer inappropriate. There is no basis for the Court to facilitate Defendants' strategy of attempting to combine grantee and non-grantee cases.

And of course, Defendants' argument also ignores the well-recognized value of different courts weighing in on important issues and thereby allowing them to percolate before reaching the Supreme Court. "To identify rules that will endure, we must rely on the . . . lower federal courts to debate and evaluate the different approaches to difficult and unresolved questions . . . . Deliberation on the question over time winnows out the unnecessary and discordant elements of doctrine and preserves 'whatever is pure and sound and fine.'" *California v. Carney*, 471 U.S. 386, 400–01 (1985) (Stephens, J., dissenting) (quoting B. Cardozo, The Nature of the Judicial Process 179 (1921)). Circuit splits arising from multiple challenges to a single agency action are commonplace, and they are a feature, not a bug, of a judicial system in which "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

Lastly, Defendants argue that the D.C. District Court's familiarity with administrative law and an unspecified "local interest" in this case favor transfer, Doc. 27 at 12, but that argument is meritless. This Court and the First Circuit have deep experience with challenges to grant terminations, in addition to their overall familiarity with the APA and constitutional issues presented here. And as explained above, this Court has a significant interest in the outcome of this case for Rhode Island.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion so this important case can be resolved in Plaintiffs' home forum.

Respectfully submitted, this 8th day of December, 2025.

/s/ James Crowley
James Crowley (R.I. Bar No. 9405)
Alexandra St. Pierre* (MA Bar No. 706739)
Conservation Law Foundation
235 Promenade St.
Suite 560, Mailbox 28
Providence, RI 02908
Telephone: (401) 228-1905
Facsimile: (401) 351-1130
jcrowley@clf.org
aestpierre@clf.org

/s/ Gary DiBianco
Gary DiBianco* (D.C. Bar No. 458669)
Jillian Blanchard* (CA Bar No. 203593)
Amy Powell* (N.C. Bar No. 50300)
Larissa Koehler* (CA Bar No. 289581)
Lawyers for Good Government
6218 Georgia Avenue NW, # 5001

/s/ Nicholas S. Torrey
Nicholas S. Torrey* (N.C. Bar No. 43382)
Banumathi Rangarajan* (N.C. Bar No. 27311)
David Neal* (N.C. Bar No. 27992)
Kimberley Hunter* (N.C. Bar No. 41333)
Jennifer Whitfield* (D.C. Bar No. 983212)
Ben Grillot* (D.C. Bar No. 982114)
Southern Environmental Law Center
136 E. Rosemary St., Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450
Facsimile: (919) 347-929-9421
ntorrey@selc.org
brangarajan@selc.org
dneal@selc.org
kmeyer@selc.org
jwhitfield@selc.org
bgrillot@selc.org

<div style="display: flex;">

Washington, D.C. 20011
Telephone: (202) 258-6826
Gary@lawyersforgoodgovernment.org
Jillian@lawyersforgoodgovernment.org
amy@lawyersforgoodgovernment.org
Larissa@lawyersforgoodgovernment.org

*/s/ Amy R. Romero*
Amy R. Romero (RI Bar # 8262)
Kevin Love Hubbard* (MA Bar #704772)
DeLuca, Weizenbaum, Barry & Revens, Ltd.
199 North Main Street
Providence, RI 02903
Telephone: (401) 453-1500
Amy@dwbrlaw.com
Kevin@dwbrlaw.com
Cooperating counsel, Lawyers' Committee for RI

*Counsel for Plaintiffs*

*\*Admitted Pro Hac Vice*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2025, the foregoing Plaintiffs' Response to Defendants' Motion to Transfer Venue was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

/s/ James Crowley
James Crowley (R.I. Bar No. 9405)
Conservation Law Foundation
235 Promenade St.
Suite 560, Mailbox 28
Providence, RI 02908
Telephone: (401) 228-1905
Facsimile: (401) 351-1130
jcrowley@clf.org